# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| **CHONG YON HUBER A/K/A SUJIN HUBER** | : | BK. No. 5:20-bk-00795-RNO |
| **A/K/A SUJIN CHONG HUBER** | : | |
| Debtor | : | Chapter No. 13 |
| | : | |
| **MATRIX FINANCIAL SERVICES CORPORATION** | : | |
| Movant | : | |
| v. | : | |
| **CHONG YON HUBER A/K/A SUJIN HUBER** | : | |
| **A/K/A SUJIN CHONG HUBER** | : | |
| Respondent | : | |
| | : | |

## ORDER

**AND NOW**, this          day of                              , 2020, upon consideration of the Debtors'

Chapter 13 Plan, and the objection of MATRIX FINANCIAL SERVICES CORPORATION, and after hearing,

it is hereby

**ORDERED** that confirmation of the Debtors' Chapter 13 Plan is denied.

**BY THE COURT:**

_____
**ROBERT N. OPEL, II**
**U.S. Bankruptcy Judge**

<u>Service by Electronic Notification</u>
ALAN BRIAN JONES, ESQUIRE
P.O. BOX 627
LAKE ARIEL, PA 18436-0627

ASST. U.S. TRUSTEE
UNITED STATE TRUSTEE
228 WALNUT STREET, SUITE 1190
HARRISBURG, PA 17101

CHARLES J DEHART, III,ESQUIRE (TRUSTEE)
8125 ADAMS DRIVE, SUITE A,
HUMMELSTOWN, PA 17036

<u>Service by First Class Mail</u>
CHONG YON HUBER
3 WAGON LANE
JEFFERSON TOWNSHIP, PA 18436-3950

**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

IN RE: :
CHONG YON HUBER A/K/A SUJIN HUBER : BK. No. 5:20-bk-00795-RNO
A/K/A SUJIN CHONG HUBER :
    Debtor : Chapter No. 13
  :
MATRIX FINANCIAL SERVICES CORPORATION :
          Movant :
       v. :
CHONG YON HUBER A/K/A SUJIN HUBER :
A/K/A SUJIN CHONG HUBER :
    Respondent :
  :

## OBJECTION OF MATRIX FINANCIAL SERVICES CORPORATION TO CONFIRMATION OF THE  DEBTORS' CHAPTER 13 PLAN

Movant, **MATRIX FINANCIAL SERVICES CORPORATION** (hereinafter referred to as "Movant"), by its attorneys Phelan Hallinan Diamond & Jones, LLP hereby objects to confirmation of the Debtors' Chapter 13 Plan as follows:

1.    Movant is **MATRIX FINANCIAL SERVICES CORPORATION**.

2.    Debtor, CHONG YON HUBER A/K/A SUJIN HUBER A/K/A SUJIN CHONG HUBER, is the owner of the property located at 3 WAGON ROAD, JEFFERSON TOWNSHIP, PA 18436-3950.

3.    On May 7, 2020, Movant filed Proof of Claim listing pre-petition arrears in the amount of $1,638.04 and a total debt of $231,831.60. A copy of the Proof of Claim is attached hereto as Exhibit "A" and made a part hereof.

4.    Debtors' Plan fails to cure the delinquency pursuant to 11 U.S.C. §1322(b)(5).  A copy of the Debtor's Plan is attached hereto as Exhibit "B" and made a part hereof.

5.    Debtors' Plan currently appears to provide for total debt payment to Movant in the amount of $234,500.00, but treats the claim under Section 2E with a proposed value.  Further, if Debtor intends to pay the total debt, the Plan should confirm that Debtors are responsible for ongoing taxes and insurance.

WHEREFORE, **MATRIX FINANCIAL SERVICES CORPORATION** respectfully requests that this Honorable Court deny confirmation of the Debtor's Chapter 13 Plan.

          Respectfully Submitted,

          /s/ Mario J. Hanyon, Esquire
          Mario J. Hanyon, Esq., Id. No.203993
          Phelan Hallinan Diamond & Jones, LLP
          1617 JFK Boulevard, Suite 1400
          One Penn Center Plaza
          Philadelphia, PA 19103
          Phone Number: 215-563-7000 Ext 31340
          Fax Number: 215-568-7616
          Email: mario.hanyon@phelanhallinan.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

IN RE:
**CHONG YON HUBER A/K/A SUJIN HUBER**          :          BK. No. 5:20-bk-00795-RNO
**A/K/A SUJIN CHONG HUBER**                          :
          **Debtor**                                           :          Chapter No. 13
                                                              :
**MATRIX FINANCIAL SERVICES**                   :
**CORPORATION**                                         :
                    **Movant**                            :
          v.                                                  :
**CHONG YON HUBER A/K/A SUJIN HUBER**          :
**A/K/A SUJIN CHONG HUBER**                          :
          **Respondent**                                 :

**CERTIFICATE OF SERVICE**

I hereby certify that service upon all interested parties, indicated below was made by sending a true and correct copy of the Objection of **MATRIX FINANCIAL SERVICES CORPORATION**, to Confirmation of Debtor's Chapter 13 Plan pursuant to the above-captioned bankruptcy case by first-class mail or by electronic means on August 4, 2020.

CHARLES J DEHART, III, ESQUIRE (TRUSTEE)          CHONG YON HUBER
8125 ADAMS DRIVE, SUITE A                             3 WAGON LANE
HUMMELSTOWN, PA 17036                                JEFFERSON TOWNSHIP, PA 18436-
                                                      3950
ALAN BRIAN JONES, ESQUIRE
P.O. BOX 627
LAKE ARIEL, PA 18436-0627

UNITED STATES TRUSTEE
228 WALNUT STREET, SUITE 1190
HARRISBURG, PA 17108

                                        Respectfully submitted,


                                        /s/ Mario J. Hanyon, Esquire
                                        Mario J. Hanyon, Esq., Id. No.203993
                                        Phelan Hallinan Diamond & Jones, LLP
                                        1617 JFK Boulevard, Suite 1400
                                        One Penn Center Plaza
                                        Philadelphia, PA 19103
                                        Phone Number: 215-563-7000 Ext 31340
                                        Fax Number: 215-568-7616
August 4, 2020                           Email: mario.hanyon@phelanhallinan.com

# EXHIBIT A

## Fill in this information to identify the case:

| | |
|---|---|
| Debtor 1 | CHONG YON HUBER A/K/A SUJIN HUBER A/K/A SUJIN CHONG HUBER |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | MIDDLE District of Pennsylvania (State) |
| Case Number | 5:20-00795 RNO |

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

The law requires that filer **must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.
**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

| | | |
|---|---|---|
| 1. | Who is the current creditor? | MATRIX FINANCIAL SERVICES CORPORATION |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor _____ |

| | | |
|---|---|---|
| 2. | Has this claim been acquired from someone else? | ☒ No<br>☐ Yes. From Whom? _____ |

| | | |
|---|---|---|
| 3. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| FLAGSTAR BANK F.S.B. | FLAGSTAR BANK F.S.B. |
| 5151 CORPORATE DRIVE | 5151 CORPORATE DRIVE |
| TROY          MI          48098<br>City          State          Zip | TROY          MI          48098<br>City          State          Zip |
| Contact Phone   (800) 393-4887 | Contact Phone   (800) 393-4887 |
| Contact Email _____ | Contact Email _____ |
| Uniform claim identifier for electronic payments in chapter 13 (if you use one) _____ | |

| | | |
|---|---|---|
| 4. | Does this claim amend one already filed? | ☒ No<br>☐ Yes. Claim number on court claims registry (if known) _____     Filed on _____ |

| | | |
|---|---|---|
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes. Who made the earlier filing? _____ |

| 6. | Do you have any number you use to identify the debtor? | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 8290 |
|---|---|---|

| 7. | How much is the claim? | $231,831.60       . **Does this amount include interest or other charges?**<br>☐ No<br>☒ Yes.    Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
|---|---|---|

| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach any document supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br><br>Money Loaned |
|---|---|---|

| 9. | Is all or part of the claim secured? | ☐ No<br>☒ Yes.    The claim is secured by a lien on property.<br><br>**Nature of property:**<br><br>☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official form 410-A) with the *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe:     3 WAGON RD, JEFFERSON TOWNSHIP, PA 18436-3950<br><br>**Basis for perfection:**     Recorded Mortgage<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**     $ _____<br>**Amount of the claim that is secured:**     $  231,831.60<br>**Amount of the claim that is unsecured:**     $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**     $  1,638.04<br><br>**Annual Interest Rate** (when case was filed) ___3.625___%<br>☒ Fixed<br>☐ Variable |
|---|---|---|

| 10. | Is this claim based on a lease? | ☒ No<br>☐ Yes.     Amount necessary to cure any default as of the date of the petition.  $ _____ |
|---|---|---|

| 11. | Is this claim subject to a right to setoff? | ☒ No<br>☐ Yes.     Identify the property: _____ |
|---|---|---|

| | | |
|---|---|---|
| **12.** Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | |
| | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligation (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | *Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorized courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   May 7, 2020 _____
                MM / DD / YYYY

/s/ Jerome Blank, Esquire _____
Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Jerome Blank, Esq., Id. No.49736 |
| | First name        Middle name        Last name |
| Title | Attorney |
| Company | Phelan Hallinan Diamond & Jones, LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 1617 JFK Boulevard, Suite 1400, One Penn Center Plaza, Philadelphia, PA 19103 |
| Contact phone | 215-563-7000         Email   jerome.blank@phelanhallinan.com |

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|
| Case Number: | 5:20-00795 RNO CHONG YON HUBER AKA SUJIN HUBER A/K/A A/K/A SUJIN CHONG HUBER | Principal balance: | $231,370.28 | Principal & interest due: | $0.00 | Principal & interest: | $1,231.34 |
| Debtor 1: | | Deferred Principal: | $0.00 | Prepetition fees due: | $0.00 | Monthly escrow: | $599.85 |
| Debtor 2: | | Interest due: | $22.98 | Escrow deficiency for funds advanced: | $438.34 | Private mortgage insurance: | $0.00 |
| Last 4 digits to identify: | 8290 | Fees, costs due: | $0.00 | Projected escrow shortage: | $1,199.70 | Total monthly payment: | $1,831.19 |
| Creditor: | MATRIX FINANCIAL SERVICES CORPORATION | Escrow deficiency for funds advanced: | $438.34 | Less funds on hand: | - $0.00 | | |
| Servicer: | FLAGSTAR BANK F.S.B. | Less total funds on hand: | - $0.00 | Total prepetition arrearage: | $1,638.04 | | |
| Fixed accrual/daily simple interest/other: | Fixed Accrual | Total debt: | $231,831.60 | | | | |

## Part 5: Loan Payment History from First Date of Default:

| | Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin. Int & esc past due balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to Fees or Charges | L. Unapplied funds | M. Principal Balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges Balance | Q. Unapplied Funds Balance |
| 03/01/2020 | | | | Beginning Balance | | | | | | | | $231,901.09 | | $1,733.71 | | |
| 03/01/2020 | $1,912.29 | | | Payment Due | | $1,912.29 | | | | | | $231,901.09 | | $1,733.71 | $0.00 | $0.00 |
| 03/02/2020 | | | | Payment Applied | 03/01/2020 | $0.00 | $530.81 | $700.53 | $680.95 | | | $231,370.28 | | $2,414.66 | $0.00 | $0.00 |
| 03/02/2020 | | | $2,853.00 | Escrow Advance - Insurance | | $0.00 | | | ($2,853.00) | | | $231,370.28 | | ($438.34) | $0.00 | $0.00 |
| Total | | | | | | | | | | | | $231,370.28 | | ($438.34) | $0.00 | $0.00 |

Phelan Hallinan Diamond & Jones, LLP
1617 JFK Boulevard, Suite 1400, One Penn Center Plaza
Philadelphia, PA 19103

UNITED STATES BANKRUPTCY COURT
MIDDLE District of Pennsylvania (WILKES-BARRE)
Bankruptcy Petition #: 5:20-bk-00795-RNO

In Re:

CHONG YON HUBER A/K/A SUJIN HUBER A/K/A SUJIN CHONG HUBER **(Debtor)**

Jerome Blank, Esq., Id. No.49736 certifies that a true and correct copy of the attached Proof
of Claim was served upon the following person(s):

Alan Brian Jones
P.O. Box 627
Lake Ariel, PA 18436-0627
**(Attorney for Debtor)**

Charles J DeHart, III
8125 Adams Drive, Suite A
Hummelstown, PA 17036
**(Chapter 13 Trustee)**

UNITED STATES TRUSTEE
228 WALNUT STREET, SUITE 1190
HARRISBURG, PA 17101
**(US Trustee)**

Date   05/07/2020                  /s/ Jerome Blank, Esquire
Jerome Blank, Esq., Id. No.49736
Phelan Hallinan Diamond & Jones, LLP
1617 JFK Boulevard, Suite 1400
One Penn Center Plaza
Philadelphia, PA 19103
Phone Number: 215-563-7000 Ext 31625
Fax Number: 215-568-7616
Email: jerome.blank@phelanhallinan.com

# NOTE

[black redaction box]

<u>APRIL 12, 2013</u>                     <u>PHILADELPHIA</u>                     ,     <u>PENNSYLVANIA</u>
                [Date]                                          [City]                                                  [State]

<u>3 WAGON RD, JEFFERSON TWP, PENNSYLVANIA 18436-3950</u>
                                        [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. 270,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **CALIBER FUNDING LLC**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.625%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on JUNE 1, 2013. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 1, 2043, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO BOX 986, NEWARK, NJ 07184-0986 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $1,231.34.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

[black redaction box]

Case 5:20-bk-00995-RNO   Doc 22 Part 03/04/20 05/07/20 03/04/20 in 12:41 Desc
Main Document   Page 1 of 24  Page 10 of 39

7. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Borrower - KARL D HUBER JR

*[Sign Original Only]*

Pay to the order of

Without recourse
By Caliber Funding, LLC

Ronald Joe Jones
Supervisor, Loan Delivery

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3200 1/01    *Page 2 of 2*



**EVIE RAFALKO MCNULTY**
Lackawanna County Recorder of Deeds
Gateway Center
135 Jefferson Avenue
Scranton, Pennsylvania 18503

This is a certification page
***This page is now a part of this legal document - DO NOT DETACH***

| RECEIPT No.: | 207608 | Recording: | |
|---|---|---|---|
| | | | |
| Clerk: | ER | Recording Fees - ROD | 33.50 |
| Instr #: | 201307649 | Parcel Certification | 20.00 |
| Rec Date: | 04/16/2013 15:24:31 PM | State Writ Tax | 0.50 |
| Doc Grp: | M | State JCS/Access to Justice | 23.50 |
| Descrip: | MORTGAGE | Affordable Housing | 13.00 |
| Num Pgs: | 15 | County Improvement Fee | 2.00 |
| | | ROD Improvement Fee | 3.00 |
| Party1: | HUBER KARL D JR | | |
| Party2: | CALIBER FUNDING, LLC | Sub Total: | 95.50 |
| Town: | JEFFERSON TOWNSHIP | | |
| | | Total: | 95.50 |

**** NOTICE: THIS IS NOT A BILL ****

I hereby CERTIFY That this document is recorded
in the Recorder of Deeds Office of Lackawanna
County, Pennsylvania



*Evelyn Rafalko McNulty*

Evelyn Rafalko McNulty
Recorder of Deeds

**Record and Return to:**
ELECTRONICALLY RECORDED BY SIMPLIFILE
TO BE RETURNED TO LARRABEE, CUNNINGHAM
& MCGOWAN/PENN LAND TRANSFER

** Information may change during the verification
process and may not be reflected on this page.

Prepared By:
**CALIBER FUNDING LLC**
**6031 CONNECTION DR., SUITE 200**
**IRVING, TX 75039**

LACKAWANNA COUNTY
Certified Property Identification
MUNI. __75__
Apr 16 - 2013
PIN: ▓▓▓▓▓
USE: _____ ASSESS VAL _____
CLERK JJ_____

After Recording Return To:
**CALIBER FUNDING LLC ATTN:**
**POST FUNDING**
**6031 CONNECTION DR., SUITE 200**
**IRVING, TX 75039**

LACKAWANNA COUNTY
Certified Property Identification
MUNI. __75__
Apr 16 - 2013
PIN: ▓▓▓▓▓
USE: _____ ASSESS VAL _____
CLERK JJ_____

UPI Number: _▓▓▓▓▓▓▓▓▓__ and ▓▓▓▓▓▓▓▓)

———————————— [Space Above This Line For Recording Data] ————————————

**Loan Number** ▓▓▓▓▓▓
**MERS Number** ▓▓▓▓▓▓▓▓

# PURCHASE MONEY MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)   **"Security Instrument"** means this document, which is dated **APRIL 12, 2013**, together with all Riders to this document.

(B)   **"Borrower"** is **KARL D HUBER JR;**. Borrower's address is **3 WAGON RD, JEFFERSON TWP, PENNSYLVANIA 18436-3950**. Borrower is the mortgagor under this Security Instrument.

(C)   **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

(D)   **"Lender"** is **CALIBER FUNDING LLC.** Lender is a LLC organized and existing under the laws of **DELAWARE.** Lender's address is **6031 CONNECTION DR., SUITE 200, IRVING, TX 75039.**

(E)   **"Note"** means the promissory note signed by Borrower and dated **APRIL 12, 2013.** The Note states that Borrower owes Lender **TWO HUNDRED SEVENTY THOUSAND AND 00/100THS** Dollars (U.S. $270,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **MAY 01, 2043.**

(F)   **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT** · Form 3039 1/01  *(page 1 of 13 pages)*
enderLive Network® Inc.

(G)  **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)  **"Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider      ☐ Second Home Rider

☐ Balloon Rider      ☐ Planned Unit Development Rider      ☐ Biweekly Payment Rider

☐ 1-4 Family Rider      ☐ V.A. Rider      ☐ Manufactured Home Rider

☐ Leasehold Rider      ☐ Revocable Trust Rider

(I)  **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)  **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)  **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)  **"Escrow Items"** means those items that are described in Section 3.

(M)  **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)  **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)  **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)  **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)  **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security

Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the _____**County**_____ [Type of Recording Jurisdiction] of _____**LACKAWANNA**_____ [Name of Recording Jurisdiction]:

## LEGAL DESCRIPTION ATTACHED HERETO AND MADE PART HEREOF

which currently has the address of **3 WAGON RD**

[Street]

**JEFFERSON TWP** , Pennsylvania **18436-3950** ("Property Address"):

[City]    [Zip Code]⁽*⁾

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve

**PENNSYLVANIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3039 1/01 *(page 3 of 13 pages)*

© 2013 LenderLive Network® Inc.

Schedule "A"
Legal Description

ALL those two parcels of land, situate, lying and being in Jefferson Township, County of Lackawanna, and State of Pennsylvania, described as follows:

PARCEL 1:

BEING Lot No. 7-A in Block "D" as indicated on map showing Plan of Lots at Moosic Lakes, recorded in the Office of the Recorder of Deeds in and for the County of Lackawanna and State of Pennsylvania in Map Book 5, Page 96.

PARCEL 2:

BEING Lot No. 8 in Block "D" as indicated on map showing Plan of Lots at Moosic Lakes, recorded in the Office of the Recorder of Deeds in and for the County of Lackawanna and State of Pennsylvania in Map Book 5, Page 96.

THE aforesaid Lot No. 8 is seventy five (75) feet more or less in front along Wagon Road and seventy five feet (75) in rear and is one hundred fifty (150) feet in depth on the Easterly side thereof and one hundred fifty one and eighty four one-hundredths (151.84) feet in depth on the Westerly side thereof.

BEING PIN NOS. 13802-010-006 and 13802-010-007.

Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3039  1/01  *(page 4 of 13 pages)*
© 2013 LenderLive Network® Inc.

permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower

secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or

condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums

required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value

divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall

derLive Network® Inc.

not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

enderLive Network® Inc.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this

Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____
Witness -

_____
Witness -

_____ (Seal)
Borrower -  **KARL D HUBER JR**

State of **PENNSYLVANIA**
County of _L V ZERTE_

On this, the ___12ᵗᵐ___ day of ___April___, ___2013___, before me,
___MARGARET M. REINERT_____, the undersigned officer, personally appeared
**KARL D HUBER JR**, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are
subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes
therein contained.

In witness whereof, I hereunto set my hand and official seals.

_____
Name:  MARGARET M. REINERT

My Commission Expires: ___2/02/2014___     Title of Officer: NOTARY PUBLIC

CERTIFICATE OF RESIDENCE  I, ___Kristin Cannaes___ do hereby certify that the correct
address of the within-named lender is 6031 **CONNECTION DR., SUITE 200, IRVING, TX  75039**, witness
my hand this ___17ᵗʰ___ day of ___April___, ___2013___.

_____
Agent of Lender.

COMMONWEALTH OF PENNSYLVANIA

NOTARIAL SEAL
MARGARET M. REINERT, NOTARY PUBLIC
KINGSTON TWP., LUZERNE COUNTY
MY COMMISSION EXPIRES FEB. 02, 2014

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3039 1/01  *(page 13 of 13 pages)*
                                                                                    nderLive Network® Inc.

Case 5:20-bk-00995-RNO   Doc 22-1 Filed 08/04/20 Entered 08/04/20 11:52:41   Desc
Main Document      Page 17 of 39      Page 26 of 39



**EVIE RAFALKO MCNULTY**
Lackawanna County Recorder of Deeds
Government Center
123 Wyoming Ave, Suite 218
Scranton, Pennsylvania 18503

---

### This is a certification page
### ***This page is now part of this legal document – DO NOT DETACH***



```
INSTRUMENT #:  202005873

Receipt#: 338565
Clerk:    LH
Rec Date: 04/22/2020 11:21:58 AM
Doc Grp:  M
Descrip:  ASSIGNMENT OF MORTGAGE
Num Pgs:  3
Rec'd Frm: FIRST AMERICAN MORTGAGE
SOLUTIONS

Party1:   HUBER KARL JR
Party2:   MATRIX FINANCIAL SERVICES CORP
Town:     JEFFERSON TOWNSHIP
```

```
Recording:

Recording Fees - ROD            13.00
Cover/Index Page                 2.00
Reference Fee                    0.00
Parcel Certification            20.00
State Writ Tax                   0.50
State JCS/Access to Justi       40.25
County Improvement Fee           2.00
ROD Improvement Fee              3.00
                             _____
Total:                          80.75
**** NOTICE: THIS IS NOT A BILL ****
```

I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office of Lackawanna County, Pennsylvania.

*Evelyn Rafalko McNulty*

**Evelyn Rafalko McNulty**
Recorder of Deeds

** Information may change during the verification process and may not be reflected on this page

```
Record and Return To:



ELECTRONICALLY RECORDED BY SIMPLIFILE
```

LACKAWANNA COUNTY
Certified Property Identification
MUNI: 750
Date: 04/22/2020
PIN ███████

Clerk: 10.00 MAB

Parcel No. **13802-010-006; 13802-010-007**

**PENNSYLVANIA**

County of **LACKAWANNA**

Loan No. ███████

LACKAWANNA COUNTY
Certified Property Identification
MUNI: 750
Date: 04/22/2020
PIN ███████

Clerk: 10.00 MAB

First American Mortgage Solutions, 1795 International Way, Idaho Falls, ID 83402, Ph. **208-528-9895**

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR CALIBER HOME LOANS INC., ITS SUCCESSORS AND ASSIGNS** located at **1901 E VOORHEES STREET SUITE C, DANVILLE, IL 61834** or **P.O. Box 2026, FLINT, MICHIGAN 48501-2026**, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over unto **MATRIX FINANCIAL SERVICES CORPORATION** located at **601 CARLSON PKWY, STE 1400, MINNETONKA, MN 55305**, Assignee, its successors and assigns, that certain Mortgage dated **APRIL 12, 2013** executed by **KARL D HUBER JR**, Mortgagor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR CALIBER FUNDING LLC, ITS SUCCESSORS AND ASSIGNS**, Original Mortgagee, in the amount of **$270,000.00** and recorded on **APRIL 16, 2013** in the Office of the Register, Recorder, or County Clerk of **LACKAWANNA** County, State of **PENNSYLVANIA**, as Document No. **201307649**, more particularly described and commonly known as:

**AS DESCRIBED IN SAID DEED OF TRUST**
Property Address: **3 WAGON RD, JEFFERSON TWP, PA 18436**
**TOWNSHIP OF JEFFERSON**

Assignment History:

Assignment previously recorded from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CALIBER FUNDING LLC, ITS SUCCESSORS AND ASSIGNS** to **CALIBER HOME LOANS, INC.** recorded on **NOVEMBER 24, 2014** as Doc No. **201418358**.

And from **CALIBER HOME LOANS, INC.** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CALIBER HOME LOANS INC., ITS SUCCESSORS AND ASSIGNS** recorded on **DECEMBER 10, 2019** as Doc No. **201919773**.

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.

TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on **APRIL 21, 2020**.
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR CALIBER HOME LOANS INC., ITS SUCCESSORS AND ASSIGNS**

**REBECCA HIGLEY, VICE PRESIDENT**



Page 1 of 2



STATE OF **IDAHO** COUNTY OF **BONNEVILLE** ) ss.

On **APRIL 21, 2020**, before me, **ADDISON RICE**, personally appeared **REBECCA HIGLEY** known to me to be the **VICE PRESIDENT** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR CALIBER HOME LOANS INC., ITS SUCCESSORS AND ASSIGNS** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

_____
**ADDISON RICE (COMMISSION EXP. 06/15/2024)**
NOTARY PUBLIC

> ADDISON RICE
> Notary Public - State of Idaho
> Commission Number
> My Commission Expires Jun 15, 2024

I do hereby certify that the precise address of the Assignee Residence is:
**MATRIX FINANCIAL SERVICES CORPORATION, 601 CARLSON PKWY, STE 1400, MINNETONKA, MN 55305**

_____
**REBECCA HIGLEY, VICE PRESIDENT**

■

**Page 2 of 2**



Representation of Printed Document

 **Flagstar** **Bank**

 **Pay by mail:**
Flagstar Bank • PO Box 660263
Dallas, TX 75266-0263

**Loan Number:** ▮▮▮▮▮▮
**Property Address:** 3 Wagon Rd
**Escrow Analysis Date:** 03/18/2020
**New Payment:** $1,831.19
**New Payment Effective Date:** 04/01/2020

KARL D HUBER
3 WAGON RD
JEFFERSON TOWNSHIP PA 18436-3950

 **Pay by website:**
flagstar.com/myloans

 **Customer service:**
(800) 968-7700
Monday-Friday 7:30 a.m.-8 p.m., ET
Saturday 7:30 a.m.-4 p.m., ET

Dear Karl D Huber,

Each year Flagstar Bank reviews your escrow account to ensure the correct amounts are being collected to pay your property taxes and homeowner's insurance. In reviewing your escrow account, we found **you're on target.**

**Quick breakdown of your Escrow review**

| | |
|---|---|
| Required Escrow Balance | **$1,199.70** |
| Bankruptcy Claim | $957.09 |
| Current Escrow Balance* | $242.61 |
| **You're on target** | **$0.00** |

*Based on all payments and disbursements due being made prior to the new payment effective date.
For more escrow related information, please reference your Bankruptcy documents filed with the court.

## Review Your Payment

| Old Mortgage Payment | | New Mortgage Payment | |
|---|---|---|---|
| Principal & Interest | $1,231.34 | Principal & Interest | $1,231.34 |
| Escrow | $680.95 | Escrow | $599.85 |
| **Monthly Mortgage Payment** | **$1,912.29** | **New Monthly Mortgage Payment** | **$1,831.19** |

Your new monthly payment is effective April 01, 2020.

## How Your Escrow Payment Is Calculated

Your new monthly escrow payment is calculated by adding all of your disbursements then dividing this figure by 12 months, which equals $599.85.

| | | | |
|---|---|---|---|
| Taxes | $312.37 | /12= | $26.03 |
| Taxes | $2,701.69 | /12= | $225.14 |
| Taxes | $1,331.14 | /12= | $110.93 |
| Insurance | $2,853.00 | /12= | $237.75 |
| **Escrow Payment** | | | **$599.85** |

As allowed by the Real Estate Settlement Procedures Act (RESPA), your mortgage documents, or state law, the escrow balance should not go below two months' tax and insurance payments, which is a minimum balance of $1,199.70.

Your projected escrow balance in March is expected to be $242.61.

| | |
|---|---|
| Required Minimum Balance: | $1,199.70 |
| Bankruptcy Escrow Claim: | $957.09 |
| Projected Balance: | $242.61 |

⌂ Equal Housing Lender   Member FDIC

(Detach and return the bottom portion with payment. Retain the top portion for your records.)

This space has been left blank intentionally.

## Important Information

If you have auto debit for your mortgage payment and have an additional principal amount included, the principal amount will not change but will be added to your new payment amount. To change your monthly principal amount, please submit a signed written request to our Auto Debit Department at: Fax: (888) 548-0528, or Mail: Flagstar Bank, Auto Debit Department, Mail Stop E-115-3, 5151 Corporate Drive, Troy MI 48098

## Review Your Upcoming Escrow Account Activity (04/01/20 to 03/01/21)

The items below reflect the payments we expect to receive each month for your escrow account and the payments we expect to make on your behalf for your real estate taxes and/or insurance premiums.

| Month | Item Description | Payment to Escrow | Payment from Escrow | Expected Balance | Required Balance |
|---|---|---|---|---|---|
| | Beginning Balance | | | $242.61 | $1,199.70 |
| 04/20 | Taxes | $599.85 | -$301.34 | $541.12 | $1,498.21 |
| 04/20 | Taxes | $0.00 | -$11.03 | $530.09 | $1,487.18 |
| 05/20 | | $599.85 | $0.00 | $1,129.94 | $2,087.03 |
| 06/20 | | $599.85 | $0.00 | $1,729.79 | $2,686.88 |
| 07/20 | | $599.85 | $0.00 | $2,329.64 | $3,286.73 |
| 08/20 | | $599.85 | $0.00 | $2,929.49 | $3,886.58 |
| 09/20 | Taxes | $599.85 | -$2,599.21 | $930.13 | $1,887.22 |
| 09/20 | Taxes | $0.00 | -$102.48 | $827.65 | $1,784.74 |
| 10/20 | | $599.85 | $0.00 | $1,427.50 | $2,384.59 |
| 11/20 | | $599.85 | $0.00 | $2,027.35 | $2,984.44 |
| 12/20 | | $599.85 | $0.00 | $2,627.20 | $3,584.29 |
| 01/21 | | $599.85 | $0.00 | $3,227.05 | $4,184.14 |
| 02/21 | Taxes | $599.85 | -$1,284.15 | $2,542.75 | $3,499.84 |
| 02/21 | Taxes | $0.00 | -$46.99 | $2,495.76 | $3,452.85 |
| 03/21 | Insurance | $599.85 | -$2,853.00 | $242.61 | $1,199.70 |
| | Total | $7,198.20 | -$7,198.20 | | |

## Review Your Escrow Account History (02/01/20 to 03/31/20)

The items below reflect the expected activity last year and compare it with the actual payments received and disbursements made.

Last year, we anticipated that payments from your account would be made during this period equaling $6,784.73. Under federal law, your lowest monthly balance should not have exceeded $1,130.78 or two (2) months of anticipated payments from your escrow account, unless your mortgage documents or state law specifies a lower amount. Your actual lowest monthly balance was $242.61.

| Month | Item Description | PROJECTED | | | ACTUAL | | |
|---|---|---|---|---|---|---|---|
| | | Payment to Escrow | Payment from Escrow | Escrow Running Balance | Payment to Escrow | Payment from Escrow | Escrow Running Balance |
| **Beginning Balance** | | | | **$3,770.67** | | | **$2,383.90** |
| February | Taxes | $565.39 | $1,147.68 | $3,188.38 | $680.95 | $1,284.15 | $1,780.70 |
| February | Taxes | $0.00 | $41.99 | $3,146.39 | $0.00 | $46.99 | $1,733.71 |
| March | Insurance | $565.39 @ | $2,581.00 @ | $1,130.78 | $1,361.90 | $2,853.00 | $242.61 |
| April | Taxes | $565.39 @ | $301.34 @ | $1,394.83 | $0.00 | $0.00 | $242.61 |
| April | Taxes | $0.00 @ | $11.03 @ | $1,383.80 | $0.00 | $0.00 | $242.61 |
| May | | $565.39 @ | $0.00 @ | $1,949.19 | $0.00 | $0.00 | $242.61 |
| June | | $565.39 @ | $0.00 @ | $2,514.58 | $0.00 | $0.00 | $242.61 |
| July | | $565.39 @ | $0.00 @ | $3,079.97 | $0.00 | $0.00 | $242.61 |
| August | | $565.39 @ | $0.00 @ | $3,645.36 | $0.00 | $0.00 | $242.61 |
| September | Taxes | $565.39 @ | $2,599.21 @ | $1,611.54 | $0.00 | $0.00 | $242.61 |
| September | Taxes | $0.00 @ | $102.48 @ | $1,509.06 | $0.00 | $0.00 | $242.61 |
| October | | $565.39 @ | $0.00 @ | $2,074.45 | $0.00 | $0.00 | $242.61 |
| November | | $565.39 @ | $0.00 @ | $2,639.84 | $0.00 | $0.00 | $242.61 |
| December | | $565.39 @ | $0.00 @ | $3,205.23 | $0.00 | $0.00 | $242.61 |
| January | | $565.39 @ | $0.00 @ | $3,770.62 | $0.00 | $0.00 | $242.61 |
| Total | | $6,784.68 | $6,784.73 | | $2,042.85 | $4,184.14 | |

The item indicated in red is the difference from a previous estimate either in date or the amount. An @ symbol indicates a scheduled payment to or from your escrow account which has not been made. Enclosed you will find a guide and answers to frequently asked questions to further assist you with understanding your escrow account and the terms in this statement.

**If you have any questions, visit flagstar.com to chat directly with a support agent or call us at (800) 968-7700.**

**Questions with regard to a change in your tax payment should be directed to your taxing authority and changes in your insurance premium should be directed to your insurance agent.**


# Get to know your escrow statement.

We want this statement to be a useful mortgage management tool that offers you the opportunity to easily understand information about the **escrow account.** This guide outlines the details provided on the statement, explains the items that may appear, and defines the terms that are used.

## How to read the statement:

**A  Loan Information**
This section provides the new payment amounts and the date when the new payment is effective.

**B  Payment Options and Contact Information**
We offer several convenient methods to make the payments.

**C  Explanation of Escrow Analysis**
Summarizes the results of the annual escrow analysis and explains the change(s) to the tax and/or insurance premiums and the effect it will have on the monthly mortgage payment.

**D  Review the Payment**
This section explains exactly how the monthly payment is broken down for principal, interest, and escrow amounts.

**E  How the Escrow Payment is Calculated**
Reflects the required minimum balance and the expected minimum balance.

**F  Important Information**
Special messages or announcements about the account are shown here. Also, details on the necessary action to take if the payment is set up through an automatic method will be provided here.

**G  Upcoming Escrow Activity**
These are the expected payments to and disbursements from the escrow account. The expected payments are based off of the actual amounts paid the prior year. The minimum balance will be noted in red.

**H  Escrow Account History**
This section will show you the actual payments into, and disbursements out of, the escrow account for the last analysis period. This information can be helpful to you when determining changes with the escrowed items that caused a change to the payment.



### What is an escrow analysis?

An escrow analysis is a review of your escrow accounts to determine if the current monthly escrow payment is enough to pay taxes, insurance, and other bills when due. Escrow analyses are typically run annually based on your property tax payment cycle. Occasionally, the payment of taxes or insurance causes the escrow account to reach a negative balance, and it may be necessary to perform more than one analysis during the year.

### Can I waive my escrow account?

Escrow accounts are required and cannot be waived on FHA (Federal Housing Administration), GRH (Guaranteed Rural Housing) or VA (Veteran Affairs) loans.

Escrow accounts on other types of loans, such as Fannie Mae or Freddie Mac loans, may be waived if certain conditions are met. Some basic conditions to determine eligibility for escrow waivers are:

- The loan-to-value ratio of your loan must be 80 percent or less.

- There have not been any payments over 30 days late in the last 12 months.

- Loan is not in a Special Flood Hazard Area (SFHA).

- The loan cannot be in foreclosure, bankruptcy or loss mitigation.

**Note:** If all conditions are met on a loan with required flood insurance, all escrows may be waived with the exception of the flood insurance. Other conditions and requirements may apply; however, if the above conditions are met, please download the Escrow Waiver Request Form from flagstar.com/MyLoans, complete it, and fax or mail it as directed.

Please note that an escrow waiver fee equal to 0.25 percent of the current principal balance or $150, whichever is greater, is charged. This fee will be charged unless not permitted by applicable state law.

### Whom do I contact if my tax amounts have changed?

Since we may already receive your tax information from your taxing authority, please call the Customer Service Department to discuss the information we may need from you.

### My insurance carrier has changed. What do I do?

Please call the Insurance Department at (833) 811-3061. Representatives are available Monday - Friday 7:30 a.m.-8 p.m. ET.

**Please refer to flagstar.com/MyLoans for a full list of Escrow FAQs.**

# EXHIBIT B

## LOCAL BANKRUPTCY FORM 3015-1

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:
**Chong Yon Huber**

CHAPTER 13
CASE NO. [                    ]

■ ORIGINAL PLAN
___ AMENDED AMENDED PLAN (Indicate 1st, 2nd, 3rd, etc.)
☐ Number of Motions to Avoid Liens
■ Number of Motions to Value Collateral

## CHAPTER 13 PLAN

### NOTICES

Debtors must check one box on each line to state whether or not the plan includes each of the following items. If an item is checked as "Not Included" or if both boxes are checked or if neither box is checked, the provision will be ineffective if set out later in the plan.

| | | | |
|---|---|---|---|
| 1 | The plan contains nonstandard provisions, set out in § 9, which are not included in the standard plan as approved by the U.S. Bankruptcy Court for the Middle District of Pennsylvania. | ☐ Included | ■ Not Included |
| 2 | The plan contains a limit on the amount of a secured claim, set out in § 2.E, which may result in a partial payment or no payment at all to the secured creditor. | ■ Included | ☐ Not Included |
| 3 | The plan avoids a judicial lien or nonpossessory, nonpurchase-money security interest, set out in § 2.G. | ☐ Included | ■ Not Included |

### YOUR RIGHTS WILL BE AFFECTED

READ THIS PLAN CAREFULLY. If you oppose any provision of this plan, you must file a timely written objection. This plan may be confirmed and become binding on you without further notice or hearing unless a written objection is filed before the deadline stated on the Notice issued in connection with the filing of the plan.

1. **PLAN FUNDING AND LENGTH OF PLAN.**

   A. **Plan Payments From Future Income**

   1. To date, the Debtor paid $__ (enter $0 if no payments have been made to the Trustee to date). Debtor shall pay to the Trustee for the remaining term of the plan the following payments. If applicable, in addition to monthly plan payments, Debtor shall make conduit payments through the Trustee as set forth below. The total base plan is $**0.00**, plus other payments and property stated in § 1B below:

| Start mm/yy | End mm/yy | Plan Payment | Estimated Conduit Payment | Total Monthly Payment | Total Payment Over Plan Tier |
|---|---|---|---|---|---|
| 1 | 0 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | Total Payments: | $0.00 |

   2. If the plan provides for conduit mortgage payments, and the mortgagee notifies the Trustee that a different payment is due, the Trustee shall notify the Debtor and any attorney for the Debtor, in writing, to adjust the conduit payments and the plan funding. Debtor must pay all post-petition mortgage payments that come due before the initiation of conduit mortgage payments.

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

3. Debtor shall ensure that any wage attachments are adjusted when necessary to conform to the terms of the plan.

4. CHECK ONE: ■ Debtor is at or under median income. *If this line is checked, the rest of § 1.A.4 need not be completed or reproduced.*

**B.** **Additional Plan Funding From Liquidation of Assets/Other**

1. The Debtor estimates that the liquidation value of this estate is **$17,565.00**. (Liquidation value is calculated as the value of all non-exempt assets after the deduction of valid liens and encumbrances and before the deduction of Trustee fees and priority claims.)

*Check one of the following two lines.*

■ No assets will be liquidated. If this line is checked, the rest of § 1.B need not be completed or reproduced.

☐ Certain assets will be liquidated as follows:

2. In addition to the above specified plan payments, Debtor shall dedicate to the plan proceeds in the estimated amount of $___ from the sale of property known and designated as ___. All sales shall be completed by ___. If the property does not sell by the date specified, then the disposition of the property shall be as follows:

_____

3. Other payments from any source(s) (describe specifically) shall be paid to the Trustee as follows:

_____

**2.** **SECURED CLAIMS.**

**A.** **Pre-Confirmation Distributions.** *Check one.*

■ None. *If "None" is checked, the rest of § 2.A need not be completed or reproduced.*

**B.** **Mortgages (Including Claims Secured by Debtor's Principal Residence) and Other Direct Payments by Debtor.** *Check one.*

■ None. *If "None" is checked, the rest of § 2.B need not be completed or reproduced.*

**C.** **Arrears (Including, but not limited to, claims secured by Debtor's principal residence).** *Check one.*
■ None. *If "None" is checked, the rest of § 2.C need not be completed or reproduced.*

**D.** **Other secured claims (conduit payments and claims for which a § 506 valuation is not applicable, etc.)**
■ None. *If "None" is checked, the rest of § 2.D need not be completed or reproduced.*

**E.** **Secured claims for which a § 506 valuation is applicable.** *Check one.*

☐ None. *If "None" is checked, the rest of § 2.E need not be completed or reproduced.*

■ Claims listed in the subsection are debts secured by property not described in § 2.D of this plan. These claims will be paid in the plan according to modified terms, and liens retained until the earlier of the payment of the underlying debt determined under nonbankruptcy law or discharge under §1328 of the Code. The excess of the creditor's claim will be treated as an unsecured claim. Any claim listed as "$0.00" or "NO VALUE" in the "Modified Principal Balance" column below will be treated as an unsecured claim. The liens will be avoided or limited through the plan or Debtor will file an adversary action or other (select method in last column). To the extent not already determined, the amount, extent or validity of the allowed secured claim for each claim listed below will be determined by the court at the confirmation hearing. Unless otherwise ordered, if the claimant notifies the Trustee that the claim was paid, payments on the claim shall cease.

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

| Name of Creditor | Description of Collateral | Value of Collateral (Modified Principal) | Interest Rate | Total Payment | Plan, Adversary or Other Action |
|---|---|---|---|---|---|
| Bank of America | 2018 Honda CR-V 11450 miles | $32,000.00 | 0% | $0.00 | Plan |
| Flagstar Bank | 3 Wagon Road, Jefferson Township, PA 18436-3950 Lackawanna County | $234,500.00 | 3.625% | $0.00 | Plan |

**F.** **Surrender of Collateral.** *Check one.*

■ None. *If "None" is checked, the rest of § 2.F need not be completed or reproduced.*

**G.** **Lien Avoidance.** *Do not use for mortgages or for statutory liens, such as tax liens. Check one.*

■ None. *If "None" is checked, the rest of § 2.G need not be completed or reproduced.*

**3.** **PRIORITY CLAIMS.**

    **A.** **Administrative Claims**

        1. <u>Trustee's Fees.</u> Percentage fees payable to the Trustee will be paid at the rate fixed by the United States Trustee.

        2. <u>Attorney's fees.</u> Complete only one of the following options:

            a. In addition to the retainer of $ **2,000.00** already paid by the Debtor, the amount of $ **0.00** in the plan. This represents the unpaid balance of the presumptively reasonable fee specified in L.B.R. 2016-2(c).

            b. $_____ per hour, with the hourly rate to be adjusted in accordance with the terms of the written fee agreement between the Debtor and the attorney. Payment of such lodestar compensation shall require a separate fee application with the compensation approved by the Court pursuant to L.B.R. 2016-2(b).

        3. <u>Other.</u> Other administrative claims not included in §§ 3.A.1 or 3.A.2 above.
        *Check one of the following two lines.*

■ None. *If "None" is checked, the rest of § 3.A.3 need not be completed or reproduced.*

    **B.** **Priority Claims (including, certain Domestic Support Obligations**

■ None. *If "None" is checked, the rest of § 3.B need not be completed or reproduced.*

    **C.** **Domestic Support Obligations assigned to or owed to a governmental unit under 11 U.S.C. §507(a)(1)(B).** *Check one of the following two lines.*

■ None. *If "None" is checked, the rest of § 3.C need not be completed or reproduced.*

**4.** **UNSECURED CLAIMS**

    **A.** **Claims of Unsecured Nonpriority Creditors Specially Classified.**
    *Check one of the following two lines.*

■ None. *If "None" is checked, the rest of § 4.A need not be completed or reproduced.*

    **B.** **Remaining allowed unsecured claims will receive a pro-rata distribution of funds remaining after payment of other classes.**

**5.** **EXECUTORY CONTRACTS AND UNEXPIRED LEASES.** *Check one of the following two lines.*

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

■ None. *If "None" is checked, the rest of § 5 need not be completed or reproduced.*

**6.    VESTING OF PROPERTY OF THE ESTATE.**

**Property of the estate will vest in the Debtor upon**

*Check the applicable line:*

☐    plan confirmation.
☐    entry of discharge.
☐    closing of case.

**7.    DISCHARGE: (Check one)**

■    The debtor will seek a discharge pursuant to § 1328(a).

☐    The debtor is not eligible for a discharge because the debtor has previously received a discharge described in § 1328(f).

**8.    ORDER OF DISTRIBUTION:**

If a pre-petition creditor files a secured, priority or specially classified claim after the bar date, the Trustee will treat the claim as allowed, subject to objection by the Debtor.

Payments from the plan will be made by the Trustee in the following order:
Level 1:        _____
Level 2:        _____
Level 3:        _____
Level 4:        _____
Level 5:        _____
Level 6:        _____
Level 7:        _____
Level 8:        _____

If the above Levels are not filled-in, then the order of distribution of plan payments will be determined by the Trustee using the following as a guide:
Level 1:        Adequate protection payments.
Level 2:        Debtor's attorney's fees.
Level 3:        Domestic Support Obligations.
Level 4:        Priority claims, pro rata.
Level 5:        Secured claims, pro rata.
Level 6:        Specially classified unsecured claims.
Level 7:        Timely general unsecured claims.
Level 8:        Untimely filed general unsecured claims to which the Debtor has not objected.

**9.    NONSTANDARD PLAN PROVISIONS**

**Include the additional provisions below or on an attachment. Any nonstandard provision placed elsewhere in the plan is void. (NOTE: The plan and any attachment must be filed as one document, not as a plan and exhibit.)**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com
Best Case Bankruptcy

2/28/20 8:39PM

Dated: **February 28, 2020**

**/s/ Alan Brian Jones, Esquire**

**Alan Brian Jones, Esquire 63663 Attorney at Law**
Attorney for Debtor

**/s/ Chong Yon Huber**

**Chong Yon Huber**
Debtor

By filing this document, the debtor, if not represented by an attorney, or the Attorney for Debtor also certifies that this plan contains no nonstandard provisions other than those set out in § 9.

5